(No. 33797.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VINCENT CIUCCI, SR., Plaintiff in Error.

*Opinion filed May 23, 1956—Rehearing denied September 12, 1956.*

GEORGE N. LEIGHTON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Per CURIAM: After trial by jury in the criminal court of Cook County, Vincent Ciucci was convicted of murder and sentenced to death. He has sued out a writ of error to review the judgment.

The indictment charged defendant with murdering his nine-year-old son, Vincent, Jr., by shooting and asphyxiation. The record shows that defendant, with his wife and their three children, lived in the rear portion of a brick building. They operated a small grocery store in the front portion. At two o'clock in the morning of December 5, 1953, the building was discovered in flames. Defendant was observed in a crouched position inside the front door of the store portion, which had a glass panel, and two persons in the neighborhood broke the door and pulled him out of the burning building. Firemen later arrived and removed the bodies of his wife and three children, which were still lying in their respective beds. The bodies were taken to the county hospital, where they were pronounced dead. Upon removal to the morgue it was discovered that each had a hole penetrating the head.

The day before the fire defendant had borrowed a .22-caliber rifle from a friend, stating that he wanted to go hunting for rabbits. After the fire subsided the rifle was found separated into its two parts in a kitchen wardrobe cabinet. Two days later police officers found several empty .22-caliber cartridge cases on the premises. Ballistic tests proved these to have been fired from the rifle borrowed by defendant. They also found portions of a sheet, a pillow slip and a pillow, all of which bore human blood stains, the latter also containing a bullet. Bullets were found in the brains of the wife and daughter, and the son's head contained a wound which an expert testified was caused by a bullet passing through the head from the right side and leaving the left side.

For two or three years prior to the fire defendant had been acquainted with a 21-year-old girl named Carol Amora. In May, 1952, her father died leaving her an inheritance of $2300. From time to time she loaned defendant a total of $1300 of this to enable him to buy a car and pay debts. They began having sexual relations, and lived together for a time in a hotel. Defendant stated his wife would not give him a divorce but only separate maintenance. After Carol became pregnant by him, he stated he owed back "alimony" to his wife, and could not afford to keep Carol with the baby coming in addition to his wife and three children. After the baby was born they resumed sexual relations, defendant expressing intentions of getting a divorce.

On the day of the fire the defendant, while in the hospital, gave a lengthy statement to the authorities in which he related that on the preceding night his children went to bed about 10:30 o'clock, his wife retired at 11:30, and he went to bed a short time after midnight; that the next thing he remembered was a feeling of heat and shortness of breath; that the building was filled with smoke, causing him to gag for breath; that he called to his wife, leaped

out of bed and tried to reach the telephone; and that he then ran through the store, banged on the front door and broke the glass.

Defendant did not testify at the trial. Three witnesses were called on his behalf. Two of them testified defendant loved his son; and the third, a neighbor, testified that about two o'clock in the morning of December 5, 1953, he heard a loud booming noise and the shouting of people, that he looked toward the building in question and saw smoke and flames coming from it, and that he ran to the front of the building and helped pick up the defendant, who was lying on the ground half in the vestibule and half outside. No evidence was offered to dispute or explain the principal facts brought out by the evidence for the prosecution.

Defendant's thirteen assignments of error may be grouped into seven general categories. He urges first that inflammatory and irrelevant evidence was admitted. The evidence complained of is the testimony of Carol Amora concerning their illicit relationship and the money borrowed by defendant; testimony concerning the deaths of defendant's wife and two daughters and descriptions of their bodies; and the rifle, empty cartridge shells, bullets, and blood-stained pillow slip and bed sheet, which were admitted as exihibits and taken by the jury into the jury room. The evidence of illicit sexual relationship and the deaths of defendant's wife and other children, it is argued, is incompetent because it relates to other offenses and because it is highly inflammatory in nature. The general rule, of course, is that evidence of a distinct substantive offense, or evidence which tends to mislead or prejudice the jury, cannot be admitted in a prosecution for another offense. This rule, however, is simply one aspect of the still more general rule that evidence must be confined to the subject of the indictment, which is the only matter an accused can be expected to come prepared to answer. (*Farris* v. *People*,

129 Ill. 521.) The rule does not render incompetent such evidence where it is pertinent to the issue and tends to prove the crime charged. (*People* v. *Fricker*, 320 Ill. 495.) In this case there is a logical connection between the sexual relationship with Carol Amora and the crime with which defendant was charged.

Evidence of the death of defendant's wife and two daughters in the same catastrophe was clearly admissible as a part of the *res gestae*. (*People* v. *Murphy*, 276 Ill. 304; *Hickam* v. *People*, 137 Ill. 75.) While the prosecution indulged in some unnecessary detail of evidence descriptive of the condition of the bodies, it was not an abuse of discretion for the court to admit it, or to admit as exhibits the rifle, cartridge cases, bullets, and blood-stained bed clothing. (*People* v. *Fisher*, 340 Ill. 216.) The general rule is that whatever tends to prove any material fact is relevant and competent. Much of defendant's argument as to evidence goes merely to its weight and not to its admissibility. There was no error in admitting the evidence in question, nor did the court err in permitting the jury to take the exhibits to the jury room. Whether particular exhibits bear directly on the charge, and hence may be taken to the jury room, is a matter resting largely in the sound discretion of the trial judge. *People* v. *Love*, 310 Ill. 558, 567.

It is further contended the trial court in two instances improperly allowed witnesses for the State to usurp the province of the jury by giving opinions of fact upon which the decision of the case depended. An expert in the city fire department testified that on the basis of his examination of charred sections of the premises on the day of the fire he had an opinion there had been five separate and distinct fires. The coroner's physician, a specialist in the field of pathology, described the wound in the head of the deceased son and testified that in his opinion it was caused by a .22-caliber bullet. Defendant insists the matters testi-

fied to were ultimate facts for the jury and incompetent as a subject for expert testimony. We can see no error in allowing the testimony. As to the latter, the fact for the jury to determine was whether the wound was inflicted by defendant with the particular gun in question. (See *Cannon* v. *People*, 141 Ill. 270, 277.) As to the fireman's testimony, the question whether there were several distinct fires is obviously not an ultimate one to be determined by the jury. It has long been the rule in this State that expert testimony is acceptable wherever peculiar skill and judgment applied to a particular subject are required to explain results or to trace them to their causes. (*People* v. *Jennings*, 252 Ill. 534, 550.) In 20 Am. Jur. 654-655, it is stated that "The modern tendency is to make no distinction between evidential and ultimate facts subject to expert opinion. The courts consider that it is more important to get to the truth of the matter than to quibble over distinctions in this regard which are in many cases impracticable. Accordingly, in many cases expert witnesses have been permitted to state facts known to them because of their expert knowledge, even though their statements may involve the ultimate fact to be determined by the jury." And at page 734 of the same volume it is observed that "A competent expert may testify from the nature of a wound as to the character of the weapon which caused it, and even nonexpert testimony is sometimes accepted in this connection." There is no merit in defendant's contentions.

Complaint is made that the court erred in limiting the cross-examination of various witnesses for the State. While the defendant's brief contains portions of the testimony, objections and rulings, the nature of the error, if any, is left to inference. Defendant fails to point out wherein the court erred in its rulings, except that as to one witness defendant complains he was not allowed to attack credibility by showing unlawful occupation; and that as to the cross-examination of an assistant State's Attorney who

had testified, defendant contends he should have been permitted to ask whether the present case was the first one handled by the witness in his official capacity. We have examined the rulings questioned and find them to be proper.

The next contention also merits little discussion. It is argued that the court displayed prejudicial conduct toward defendant and his counsel. To support the assertion defendant complains that the judge, in overruling objections to testimony of Carol Amora, used the words "she may answer." Defendant says that by such remarks the judge conveyed a suggestion of partiality toward State witnesses. Another matter relied upon to support the position is that in sustaining objections the court said "Jury to disregard," which comment defendant considers an inadequate correction of impropriety. The last matter criticized by defendant is the practice of the judge in retiring to his chambers to pass upon objections raised at the trial. The contention, apparently, is that this practice, in a manner which defendant does not point out or explain, accentuated "inflammatory and prejudicial argument" by the prosecutor. We see no impropriety in any of these remarks and actions of the court.

It is urged that the prosecutor persisted in asking questions to which objections had been sustained, and that in his closing argument to the jury, he made improper and prejudicial appeals to emotion and passion. The argument to the jury emphasized that the wife and children received no trial at the hands of defendant, that he imposed on them the death sentence and shot them "like a Chinese executioner," and that defendant should get the same kind of penalty. We have carefully considered the conduct complained of, and conclude it does not require or justify a reversal of the judgment. As to the closing argument, the jury had a duty to fix the penalty from a consideration of all the circumstances, including the atrocity of the crime. The prosecutor was within the limits of propriety in argu-

ing that the death penalty should be imposed. *People* v. *Sullivan,* 345 Ill. 87.

Defendant objects to the refusal of a tendered instruction to acquit him if the evidence could be reconciled on any hypothesis other than his guilt. While the instruction might properly have been given, it was not error to refuse it since another instruction tendered by defendant was given which embodied the same proposition. (*Parsons* v. *People,* 218 Ill. 386.) Complaint is made of an instruction given at request of the State which defined murder as unlawful killing with malice aforethought, and which stated that "the unlawful killing may be perpetrated by shooting, asphyxiating or by any other of the various forms or means by which human nature may be overcome, and death thereby occasioned." The instruction was sufficiently based on the evidence, and is not subject to the criticisms made by defendant. The fact that the evidence was circumstantial in nature does not render the instruction inapplicable. Another given instruction objected to by defendant declared, *inter alia,* that the law demands a conviction wherever there is sufficient evidence to show the defendant's guilt beyond a reasonable doubt, and that circumstantial evidence is legal evidence. This instruction was given and approved in *People* v. *Guido,* 321 Ill. 397, at page 415, and has received further approval in other decisions of this court. While we feel that an instruction using the words "authorizes" or "warrants" would be more appropriate than the word "demands," and the definition of circumstantial evidence should have been qualified to the extent that such evidence must be strong and convincing in character, nevertheless we do not believe the result of the trial would have been different had the instruction been given in the form above suggested and that any irregularity in this respect does not constitute prejudicial error. Objection to a further given instruction defining malice aforethought is too trivial and lacking in merit to warrant discussion.

It is assigned as error that the court denied a "motion to dismiss" on the ground of former jeopardy. Defendant had been tried and convicted in two previous trials for the murders of his wife and daughter respectively. He now argues that the two former prosecutions were for the same offense as the present one, and hence operate as a constitutional bar to this prosecution. The long-established test of former jeopardy, however, is whether the facts charged in the latter indictment would, if found to be true, have justified a conviction under the earlier indictment. (*People* v. *Allen*, 368 Ill. 368.) When this test is applied here it is obvious that under the indictment for murder of his wife a verdict could not be sustained finding him guilty of murdering his son. It is the identity of the offense, and not of the act, which is referred to in the constitutional guaranty against double jeopardy; and where two or more persons are unlawfully killed, even though by a single act, there is a corresponding number of distinct offenses. (*People* v. *Allen*, 368 Ill. 368.) In the case at bar not only were these separate offenses, but the acts themselves, *i.e.*, the shootings, were separate and distinct. There is no merit to the present contention.

Counsel urges, finally, that the evidence is insufficient to sustain the verdict. He argues that the proof does not show whether the cause of death was shooting or whether it was inhalation of smoke or carbon monoxide from the fire; that there is nothing to prove the origin of the fire; and that there is nothing but suspicious circumstances to connect defendant with the crime. We think the evidence is ample to show his guilt beyond all reasonable doubt. It is not disputed that he was present with his wife and children shortly before their deaths, and was the only person present with their dead bodies. It is likewise beyond reasonable dispute that he had motive for ridding himself of his family; that on the preceding day he had borrowed a .22-caliber gun; that empty cartridge cases fired

from that gun were found on the premises; and that the decedent was shot in the head with a .22-caliber bullet. There is absolutely nothing in the record tending to show that the crime was committed by someone else.

On this record we are convinced not only that defendant was proved guilty beyond a reasonable doubt, but that he also has been accorded a fair trial under the law. This murder was a revolting, brutal one, with no extenuating circumstances whatever. Where the law is shown to have been fully met it is the duty of this court to affirm the judgment.

The judgment of the criminal court of Cook County is affirmed, and the clerk of this court is directed to enter an order fixing October 5, 1956, as the date on which the original sentence entered in the criminal court of Cook County shall be executed. A certified copy of the order shall be furnished by the clerk of this court to the sheriff of Cook County.

*Judgment affirmed.*

END OF VOLUME.