(No. 48424.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT L. GRAY, Appellee.

*Opinion filed October 5, 1977.*

46

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Robert B. Thompson, and Nancy DeFranco, Assistant Public Defenders, and Joseph A. Power, Jr., law student, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Here the sole issue is whether the constitutional guarantees against double jeopardy prohibit criminal prosecution for aggravated battery and attempted murder after a finding and punishment for indirect criminal contempt of court based upon the same conduct.

Defendant, Robert Gray, struck his wife with a gun and then shot her. This violated a protective order in a divorce proceeding enjoining Gray from striking or molesting his wife.

The trial judge in the divorce case conducted a hearing on the wife's emergency petition that Gray be held in contempt of court for assaulting and shooting her. There was a finding of wilful contempt of court, and Gray was sentenced to six months in Cook County jail.

Subsequently Gray was indicted for aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4) and the attempted murder (Ill. Rev. Stat. 1973, ch. 38, par. 8—4) of his wife based on the same conduct. His motion to dismiss on double jeopardy grounds was denied. He was convicted of aggravated battery and sentenced to 1 to 3 years.

On appeal, the Appellate Court, First District, found Gray had been placed twice in jeopardy for the same offense and reversed the criminal conviction. (36 Ill. App. 3d 720.) We granted the State's petition for leave to appeal under Rule 315 (58 Ill. 2d R. 315).

The pivotal question is whether Gray's offense of criminal contempt and his offense of aggravated battery constitute the same offense for purposes of the double jeopardy provision of the Illinois or the United States constitutions.

Both the fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution of 1970 protect persons from being placed twice in jeopardy for the same offense. The fifth amendment to the Constitution of the United States provides:

"*** nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.)

Article I, section 10, of the Illinois Constitution states:

"No person shall *** be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, sec. 10.)

The fifth amendment, with or without any provision in the Illinois Constitution, is controlling. It applies to the States through the due process clause of the fourteenth amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056.

The concept of double jeopardy has long been a part of the common law. Blackstone employed the term

"jeopardy" in describing the underlying principle of the pleas of *autrefois acquit* (prior acquittal) and *autrefois convict* (prior conviction). This principle, he said, "is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence." 4 W. Blackstone, Commentaries *335.

Coke described the protection afforded by the principle of double jeopardy as a function of three related common law pleas: *autrefois acquit* (prior acquittal), *autrefois convict* (prior conviction), and former pardon. 3 E. Coke, Institutes 212-13 (1797); J. Sigler, Double Jeopardy 2-16 (1969).

To determine whether two actions are prosecutions for the same offense, the test is: Would the same evidence sustain the proof of each offense? It is not necessary that a person be tried twice for the same action; so long as he has been put in jeopardy, the guarantee against subsequent jeopardy attaches. *Gavieres v. United States* (1911), 220 U.S. 338, 342, 55 L. Ed. 489, 490, 31 S. Ct. 421, 422.

Very recently in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, Mr. Justice Powell, speaking for the court in holding that prosecution and punishment for joyriding prohibited prosecution and punishment for auto theft, had occasion to restate the controlling principles which bar successive prosecutions as well as consecutive sentences at a single trial:

"The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932):

'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether

there are two offenses or only one, is
whether each provision requires proof of a
fact which the other does not. ***'

This test emphasizes the elements of the two
crimes. 'If each requires proof of a fact that the
other does not, the *Blockburger* test is satisfied,
notwithstanding a substantial overlap in the proof
offered to establish the crimes. ***' *Iannelli v.
United States,* 420 U.S. 770, 785 n.17 (1975).

If two offenses are the same under this test
for purposes of barring consecutive sentences at a
single trial, they necessarily will be the same for
purposes of barring successive prosecutions."
(432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97
S. Ct. 2221, 2225.)

So also if the two offenses differ so as to permit the
imposition of consecutive sentences, nonetheless successive
prosecutions are barred where the second requires the
litigation of factual issues determined by the first. (*Ashe v.
Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S.
Ct. 1189.) Since it is a part of that constitutional
guarantee, "its applicability in a particular case is no longer
a matter to be left for state court determination within the
broad bounds of 'fundamental fairness,' but a matter of
constitutional fact ***." *Ashe v. Swenson* (1970), 397
U.S. 436, 442-43, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189,
1194.

The doctrine of collateral estoppel is embodied in the
fifth amendment's guarantee against double jeopardy. As
Holmes expressed it: "It cannot be that the safeguards of
the person, so often and so rightfully mentioned with
solemn reverence, are less than those that protect from a
liability in debt." *United States v. Oppenheimer* (1916),
242 U.S. 85, 87, 61 L. Ed. 161, 164, 37 S. Ct. 68, 69.

The protections afforded by the constitutional guaran-
tees are against a second prosecution after acquittal, a

second prosecution after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.

The underlying considerations for these protections are expressed in *United States v. Wilson* (1975), 420 U.S. 332, 343, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021:

> "The interests underlying these three protections are quite similar. When a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense. [Citations.] When a defendant has been acquitted of an offense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him, 'thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "

To subject a person to multiple successive prosecutions because of differences in detail in proofs undermines the fundamental basis of the double jeopardy ban. Considerations of fairness and finality, the very foundation of the double jeopardy bar, require a nontechnical evaluation of the "same evidence" test, and a focus upon the similarity of the elements involved in the two proceedings. Thus the conviction of a lesser included offense barred prosecution for a greater offense, although proof of the greater offense required the establishment of an additional intent element. The greater offense was the same as the lesser offense, since the lesser offense required no proof beyond that required for the conviction of the greater offense. *Brown v. Ohio* (1977), 432 U.S. 161, 53

L. Ed. 2d 187, 97 S. Ct. 2221.

Here an application of the same-evidence test makes manifest that defendant was prosecuted and punished twice for the same offense. He was tried and held in indirect criminal contempt of court as well as punished for striking and shooting his wife. Subsequently he was tried and convicted of aggravated battery and acquitted of the crime of attempted murder for the same conduct.

The purpose of criminal contempt is identical with that of many other criminal laws, namely, to protect the institutions of government. Certainly the impact on the particular defendant is the same. (*Bloom v. Illinois* (1968), 391 U.S. 194, 201, 20 L. Ed. 2d 522, 528, 88 S. Ct. 1477, 1482.) As Holmes stated: "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States* (1914), 233 U.S. 604, 610, 58 L. Ed. 1115, 1120, 34 S. Ct. 693, 695.

Notwithstanding defendant's conviction and punishment for criminal contempt, he was tried and convicted a second time for the same conduct, striking and shooting his wife, in a criminal proceeding. The finding of criminal contempt and the conviction of aggravated battery constituted double trial and double punishment for the same offense.

The State urges there was no infringement upon defendant's guarantee against double jeopardy because the divorce court lacked jurisdiction to try offenses under the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—1 *et seq.*). This argument is absent merit.

Two courts within one sovereign State may not place a person on trial for the same offense. (*Waller v. Florida* (1970), 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184; *People v. Allison* (1970), 46 Ill. 2d 147.) Both the divorce

court and the criminal court are courts of the same sovereign, the State of Illinois. Since the offenses of criminal contempt and aggravated battery were the same, a trial for the offense in both the divorce and criminal court violates the guarantees against double jeopardy.

The judgment of the appellate court reversing the second conviction for aggravated battery was correct. It is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, specially concurring:

I concur in the court's judgment under the compulsion of *Waller v. Florida* (1970), 397, U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184.

In *Waller* the Supreme Court held that identical conduct could not be punished as a violation of a municipal ordinance and again as a violation of a State statute "since both are arms of the same sovereign." (397 U.S. 387, 393, 25 L. Ed. 435, 440, 90 S. Ct. 1184, 1188.) That holding, it seems to me, is conclusive on the facts of this case, for the contempt of court is an offense against the sovereign State of Illinois, acting through its judicial branch, and the aggravated battery and attempted murder charges represent direct violations of the same sovereign's criminal laws.

MR. JUSTICE RYAN, dissenting:

I dissent from the majority opinion, which fails to recognize that criminal contempt by violation of a court order and aggravated battery are two separate offenses for double jeopardy purposes, each requiring distinct elements of proof, even though both offenses arise from the same course of conduct. The majority opinion also creates a potential conflict between judge and prosecutor as to who will determine when an act will be prosecuted as a criminal violation, because, as discussed later, if a contempt conviction stands as a bar to criminal prosecution, a minor

contempt penalty could potentially bar any prosecution for a serious criminal offense.

The applicable rule, as petitioner noted in his brief, was stated in *People v. Hairston* (1970), 46 Ill. 2d 348, 358:

> " 'For a double jeopardy claim to be viable, it must be shown that the two offenses charged are in law and in fact the same offenses.' (*Hattaway v. United States* (5th cir. 1968), 399 F.2d 431, 432.) 'It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against double jeopardy; ***.' (*People v. Ciucci,* 8 Ill. 2d 619, 629, aff'd 356 U.S. 571, 2 L. Ed. 2d 983, 78 S. Ct. 839.) Two or more distinct offenses may emanate from the same transaction or act, and we have consistently held that the rule that a person cannot be put twice in jeopardy for the same offense has no application where two separate and distinct crimes are committed by one and the same act. (*People v. Allen,* 368 Ill. 368, 379; *People v. Golson,* 32 Ill. 2d 398, 410-411.)"

As the majority notes, the test for determining whether two offenses are identical for double jeopardy purposes is the *Blockburger* test: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (*Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182.) Having noted this established rule of law, the majority recites the rationale for the double jeopardy prohibition, notes the similarity of purpose of criminal contempt and other criminal laws, and then states: "Notwithstanding defendant's conviction and punishment for criminal contempt, he was tried and convicted a second time for *the same conduct,* striking and shooting his wife, in a criminal

proceeding." (Emphasis added.)

I agree with the statement that both prosecutions arose from the same course of *conduct* of defendant. In the next line, however, the majority concludes: "The finding of criminal contempt and the conviction of aggravated battery constituted double trial and double punishment for the same *offense.*" (Emphasis added.) In so concluding, the majority ignores the fact that they are not the same offense, that different elements must be proved for criminal contempt and aggravated battery under the facts of this case.

The criminal contempt in this case consisted of a violation of a protective order, enjoining defendant from "in any way interfering with the marital home," from "interfering with the freedom and well-being" of his wife and children or "in any way striking, hitting, choking, assaulting, molesting or in any way harming" his wife or children.

Generally, wilfullness is a necessary element of criminal contempt. (*United States v. Greyhound Corp.* (7th Cir. 1974), 508 F.2d 529, 531.) In a contempt of the present kind, "the existence of an order of the court and proof of wilful disobedience are essential." (*People v. Wilcox* (1955), 5 Ill. 2d 222, 228.) Conceivably, the defendant could have been found guilty of contempt for shouting at his wife or children while on the marital premises, long before the shooting occurred. In fact, the contempt order found that defendant wilfully violated the injunction "in that he did *** assault his wife with a gun and did then and there threaten the lives of his wife, children, attorney and others and did shoot his wife and beat her with a gun ***."

On the other hand, in order to prove aggravated battery under the facts of this case, by statute, it is necessary to prove that the defendant, in committing a battery (a) intentionally or knowingly caused great bodily

harm, permanent disability or disfigurement or (b) used a deadly weapon. Ill. Rev. Stat. 1973, ch. 38, pars. 12—4(a), (b).

Thus, significantly different elements are involved in the proof of each offense. While the majority simply states that the act is the same and thus the offense is identical, it fails to recognize exactly what must be proved to establish each offense. Aggravated battery does not require proof of a court order or wilful disobedience; it merely requires proof of an intentional bodily contact causing great bodily harm, or the use of a weapon. It should be noted that much of the conduct found in the court order to be contemptuous (assaulting his wife with a gun and threatening the lives of his wife, children and attorney) constitutes criminal contempt separate and apart from defendant's conduct which would be involved in the criminal charge.

In *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, relied on by the majority, the court held that an auto theft conviction barred a subsequent prosecution for joyriding, since joyriding was a lesser included offense of auto theft. The contempt in our case is not a lesser included offense. It is a separate and distinct offense to be prosecuted for separate purposes as noted later. The conduct for which the court found the defendant guilty constituted contempt whether or not he could be criminally punished for all or any part of such conduct.

In the appellate court opinion which the majority affirms, the court cited a Federal district court case, *United States v. United States Gypsum Co.* (D.D.C. 1975), 404 F. Supp. 619, which held that wilful disobedience of a court order is not such a material additional element so as to constitute criminal contempt a different offense from a criminal violation arising out of the same acts. In that case, the respondents had been enjoined from engaging in

price-fixing activities, acts which constituted statutory violations in and of themselves under the Sherman Act. They were indicted for conspiracy to commit price-fixing violations and found guilty after a four-month trial. Subsequently, a contempt petition was filed, based on the same acts, and the defendants pleaded double jeopardy. The court noted that the allegations of the criminal indictment were "virtually identical" to those of the contempt petition, the hearing would involve the "same evidence of the same conspiracy," the hearing would be a "replay" of the criminal trial requiring proof of the same facts by the same evidence, and the only additional element would be proof of a wilful violation of the court decree. (404. F. Supp. 619, 621-22.) The court then dismissed the contempt petition on grounds of double jeopardy.

The case is distinguishable from the case at bar. In *United States Gypsum,* the court order specifically prohibited a criminal act, price-fixing. Proof of a wilful violation of the order would have necessarily established a violation of the Sherman Act. The criminal trial was held prior to the contempt proceeding, and virtually all of the evidence and elements of proof would be the same. In the case at bar, however, the contempt conviction only held that the defendant had wilfully committed certain acts which violated the court order. The court order could have been violated by an otherwise legal act.

The significance of the criminal contempt element of wilful disobedience becomes more apparent when the respective purposes of contempt and ordinary criminal offenses are considered. The element of wilful disobedience is not a mere formal requirement, but is directly related to the stated purpose of criminal contempt proceedings—protecting the dignity of the judiciary: "Criminal contempt is conduct which is directed against the dignity and authority of the court or a judge acting

judicially \*\*\*." (*People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 416.) "Criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the authority of the court." (*People v. Marcisz* (1975), 32 Ill. App. 3d 467, 470.) While it has been suggested that the role of both criminal contempt and ordinary criminal offenses is to protect the institutions of government and the enforcement of their mandates (see *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477), it is my belief that contempt retains its distinctive function in specifically protecting our judicial system from abuse. Thus, I believe that the additional element of wilful disobedience in this case is neither immaterial nor insubstantial in distinguishing criminal contempt from ordinary offenses.

Two Federal cases, cited by the People at the appellate level, while factually distinguishable from the case at bar, do lend support to the proposition that the same conduct will support convictions for both criminal contempt and ordinary offenses. In *United States v. Rollerson* (D.D.C. 1970), 308 F. Supp. 1014, *aff'd* (1971), 449 F.2d 1000, a defendant in a criminal trial was summarily found guilty of contempt for throwing a water pitcher at the prosecutor. He was later charged with assault on a Federal officer. The court held that there was no double jeopardy, noting that since the contempt was punished summarily, the defendant was not subjected to multiple proceedings. The court did note that dual governmental interests also supported the two charges stemming from the same conduct:

> "The separate interests of the Federal Court in itself protecting the dignity of the Court, and of the Federal prosecuting authority in initiating action to protect persons and property, recognized in *Mirra* [*United States v. Mirra* (S.D.N.Y.

1963), 220 F. Supp. 361], have consistently been recognized by the Courts. That separate interests in different governmental elements will support convictions under separate statutes making criminal the same acts which injure both interests was fully recognized by Justice Brennan in *Abbate v. United States*, 359 U.S. 187, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959)." (308 F. Supp. 1014, 1018.)

The necessity of criminal contempt as a tool for deterring abuse of the judiciary demands that a judge not be required to consider the consequences of foreclosing subsequent criminal. prosecutions. As the People note in their brief, the majority holding, in effect, gives the trial judge the power to decide whether a contumacious party will be charged with a criminal offense, thus usurping the function of the State's Attorney. It might also be noted that in most cases of a violation of a court order, the criminal contempt is really initiated or prosecuted by the aggrieved party; the contempt is not prosecuted in the name of the People and the State's Attorney is not even notified or aware of the proceedings.

*United States v. Mirra* (S.D.N.Y. 1963), 220 F. Supp. 361, also cited by the People at the appellate level, indicates yet another danger. In that case, a defendant was summarily found in contempt for throwing a chair at the prosecutor during trial. On a subsequent prosecution for assault on a Federal officer, he pleaded the contempt conviction as a bar under double jeopardy. The court, while characterizing criminal contempt as *sui generis* (a label of questionable validity at present in light of *Bloom v. Illinois*), held that there was no double jeopardy since defendant did not have to defend in multiple proceedings. The court did note that an anomalous result might follow if contempt proceedings were held to be a bar to subsequent criminal prosecutions:

"Let us consider by way of illustration the

consequences of upholding Mirra's claim in the context of an extreme but not wholly improbable case that could have arisen after, and out of, Mirra's contempt conviction. Assume that Mirra's projectile had received more accurate a propulsion and had scored on its intended target—the Assistant United States Attorney. And assume further the grisly and morbid fact that the Assistant United States Attorney had sustained an injury which ultimately proved fatal. To sustain Mirra's claim would, in effect, grant a summary contemnor immunity from a homicide prosecution—an unconscionable result. Merely to state the case suffices to reveal what must perforce be the answer to Mirra's theory." (220 F. Supp. 361, 366.)

Similarly, in the present case, it is conceivable, though unlikely, that the defendant could have been fined $50 for his contumacious conduct. If his wife later died as a result of the shooting, we would have the undesirable dilemma where a murder prosecution is barred because of a $50 fine.

The People also analogize to the case of *People v. Bressette* (1970), 124 Ill. App. 2d 469, as a guideline for deciding the case at bar. In that case, the defendant was charged with reckless homicide for his acts which caused an auto accident. He argued that the prosecution was barred by the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, pars. 3—3, 3—4(b)), since he had pleaded guilty to a charge of improper change of traffic lane, an offense arising from the same conduct as that alleged in the reckless homicide charge. The appellate court held that the subsequent prosecution was not barred, since the prosecutor did not know of the previous conviction. While the present case was not decided under this statute, *Bressette* points out the undesirable result which may follow from

the majority opinion: a State's Attorney may be barred from prosecuting a criminal offense, simply because the underlying conduct was previously punished by a contempt penalty of which he was unaware.

I would accordingly reverse the appellate court and affirm the trial court's denial of the defendant's motion to dismiss.