165 Ill. App.3d 630 (1988)
518 N.E.2d 1303
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant,
v.
MICHAEL E. DOHERTY, Defendant-Appellee.
No. 2-86-0503.
Illinois Appellate Court  Second District.
Opinion filed January 28, 1988.
*631 *632 Robert J. Morrow and Robert F. Casey, State's Attorneys, of Geneva (John X. Breslin, William L. Browers, and Howard R. Wertz, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellee.
Reversed and remanded.
JUSTICE UNVERZAGT delivered the opinion of the court:
The State appeals from an order of the circuit court of Kane County dismissing child abduction charges (Ill. Rev. Stat. 1985, ch. 38, par. 10-5(b)(1)) against defendant, Michael Doherty, on double jeopardy grounds, because another Kane County court had found him in contempt of court for the same conduct. The marriage of Michael and Margaret Doherty was dissolved on September 10, 1982, at which time the court awarded Margaret custody of the couple's two children. On October 5, 1984, Michael took the children, then ages eight and six, for a weekend visit, but failed to return them to Margaret on October 7 as the custody order required. Michael and the children were eventually located in Clay County, Indiana, in August 1985, when a resident notified authorities after recognizing the children in photographs circulated by the Illinois Department of Law Enforcement.
A grand jury returned an indictment charging defendant with child abduction (Ill. Rev. Stat. 1985, ch. 38, par. 10-5(b)(1)) on October 1, 1985. On October 24, 1985, Margaret filed a petition for rule to *633 show cause why the defendant should not be held in contempt in the dissolution action. (She had filed an earlier petition in defendant's absence, but there is no indication in the record that any action was taken on that petition.) Defendant filed a response, and each party filed a memorandum on the issue. The contempt hearing was held on December 2, 1985, while the child abduction case was still in the discovery phase. Defendant and Margaret were the only witnesses to testify at the hearing. On March 4, 1986, the dissolution court entered an order finding defendant in contempt of court for failing to return the children to Margaret from October 7, 1984, to August 8, 1985. The court sentenced defendant to 90 days in the county jail, but stayed the sentence conditioned on defendant's future compliance with the court's pending orders. Defendant subsequently moved for dismissal of the child abduction charge on double jeopardy grounds. The criminal court dismissed the charge on May 19, 1986, and the State then filed this appeal.
The State argues that the court's sentence was imposed for civil, rather than criminal, contempt of court and that the double jeopardy protections conferred by the United States (U.S. Const., amend. V) and Illinois Constitutions (Ill. Const. 1970, art. I, § 10) do not mandate dismissal of the criminal charge in any event.
The Illinois Supreme Court recently addressed the issue of whether a finding of criminal contempt will bar later prosecution on substantive criminal charges relating to the same conduct. (People v. Totten (1987), 118 Ill.2d 124.) In Totten, which was decided after the parties to this appeal had filed their briefs, the court approved the subsequent criminal prosecutions of two defendants. In the case of the first defendant, the court held that, where the defendant has been summarily adjudged in direct criminal contempt, the double jeopardy clause does not prohibit a subsequent criminal prosecution because the "defendant has not yet been called upon to `marshal the resources and energies necessary to his defense.'" (118 Ill.2d at 134, quoting language originally stated in Abbate v. United States (1959), 359 U.S. 187, 198-99, 3 L.Ed.2d 729, 736, 79 S.Ct. 666, 673 (Brennan, J., separate opinion).) With respect to the second defendant, who had been adjudged in indirect criminal contempt after an evidentiary hearing, the court held that the substantive criminal charge and the contempt charge are different offenses for double jeopardy purposes only if each "requires proof of an additional fact not required to prove the other." (Totten, 118 Ill.2d at 138, citing Blockburger v. United States (1932), 284 U.S. 299, 304, 76 L.Ed. 306, 309, 52 S.Ct. 180, 182.) The court expressly overruled People v. Gray (1977), 69 Ill.2d 44 (Totten, *634 118 Ill.2d at 139), which had held that the offenses were the same if the same evidence would sustain the proof of each. People v. Gray, 69 Ill.2d at 49.
 1, 2 In People v. Rodriguez (1987), 162 Ill. App.3d 149, also decided after the parties here had filed their briefs, this court applied the Totten test to determine that child abduction (Ill. Rev. Stat. 1985, ch. 38, par. 10-5(b)(1)) and indirect criminal contempt are the same offense for double jeopardy purposes. (People v. Rodriguez, 162 Ill. App.3d at 155.) The State correctly avers that, to sustain the charge of child abduction, the State must establish facts not required to sustain an indirect criminal contempt charge. (See Ill. Rev. Stat. 1985, ch. 38, par. 10-5(b)(1) (requiring proof that the defendant concealed or detained the child or removed the child from the court's jurisdiction).) The reverse is not true, however. (See People v. Rodriguez, 162 Ill. App.3d at 155 (noting that the only elements of criminal contempt are: (1) the wilful violation of (2) an existing court order, both of which facts are also required to establish child abduction).) We must therefore conclude that indirect criminal contempt is a lesser included offense of child abduction, because a conviction for child abduction would necessarily establish all of the elements of an indirect criminal contempt. (See Totten, 118 Ill.2d at 138-39, citing People v. Mueller (1985), 109 Ill.2d 378, and Illinois v. Vitale (1980), 447 U.S. 410, 65 L.Ed.2d 228, 100 S.Ct. 2260.) The two are, therefore, the same offense for double jeopardy purposes. (See Brown v. Ohio (1977), 432 U.S. 161, 169, 53 L.Ed.2d 187, 196, 97 S.Ct. 2221, 2227; People v. Rodriguez, 162 Ill. App.3d at 155.) Double jeopardy principles nevertheless do not apply where the prior adjudication was one of civil contempt. (See Yates v. United States (1957), 355 U.S. 66, 74-75, 2 L.Ed.2d 95, 102-03, 78 S.Ct. 128, 133-34.) It is therefore necessary to determine whether the sanction imposed below was civil or criminal.
 3 The distinction between civil and criminal contempt is often a difficult one to make. (See, e.g., People ex rel. Chicago Bar Association v. Barasch (1961), 21 Ill.2d 407, 409.) A proceeding in civil contempt most often arises when the contemnor has refused to do what was ordered, while criminal contempt arises when he does what has been prohibited. (See Shillitani v. United States (1966), 384 U.S. 364, 368, 16 L.Ed.2d 622, 626, 86 S.Ct. 1531, 1534; People v. Lucas (1986), 146 Ill. App.3d 5, 11.) The two can best be distinguished by looking to the purpose and character of the sanction imposed  "what does the court primarily seek to accomplish by imposing sentence?" (Shillitani v. United States, 384 U.S. at 370, 16 L.Ed.2d at 627, 86 *635 S.Ct. at 1535.) A sanction for civil contempt is prospective in nature and primarily intended to compel a contumacious party to comply with the court's order or decree for the benefit of another party. (See People ex rel. Chicago Bar Association v. Barasch, 21 Ill.2d at 409; People v. Lucas, 146 Ill. App.3d at 10.) A sanction for criminal contempt is retrospective in nature and is primarily intended to punish the contemnor and to preserve the dignity and authority of the court. People ex rel. Chicago Bar Association v. Barasch, 21 Ill.2d at 409; People v. Lucas, 146 Ill. App.3d at 11.
In the case at bar, the court imposed the following sentence:
"MICHAEL E. DOHERTY is sentenced to the Kane County Jail for a period of 90 days as penalty for his willful contempt of this court. This Order of incarceration is stayed until August 3, 1986, subject to his further full compliance with all pending Orders of this Court. If there has been full compliance, the Court shall reconsider its Order of incarceration that has been stayed through August 3, 1986."
The defendant was never imprisoned on the sentence.
 4 We note initially that the fact that the court has imposed imprisonment, or even a fixed term of imprisonment, is not determinative, because, while any imprisonment necessarily punishes and deters, "`[i]t is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt." (Shillitani v. United States, 384 U.S. at 369, 16 L.Ed.2d at 627, 86 S.Ct. at 1535, quoting Gompers v. Buck's Stove & Range Co. (1911), 221 U.S. 418, 441, 55 L.Ed. 797, 806, 31 S.Ct. 492, 498.) The court's conclusion that defendant's actions were willful and its characterization of the sentence as a "penalty" are also not conclusive. (Shillitani v. United States, 384 U.S. at 369, 16 L.Ed.2d at 626, 86 S.Ct. at 1535; People v. Rodriguez, 162 Ill. App.3d at 153.) However, there is one nearly conclusive distinguishing characteristic of a sanction for civil contempt  because the sanction is coercive, "the civil contemnor must be provided with the `keys to his cell.' That is, he must be allowed to purge himself of contempt even after he has been imprisoned." In re Marriage of Logston (1984), 103 Ill.2d 266, 289; People v. Rodriguez, 162 Ill. App.3d at 154.
In Shillitani v. United States (1966), 384 U.S. 364, 16 L.Ed.2d 622, 86 S.Ct. 1531, the United States Supreme Court concluded that orders sentencing the defendants to two years' imprisonment for "willful disobedience" in refusing to answer questions before a grand jury were sanctions for civil contempt. Although there was no provision expressly allowing the defendants to purge the contempt, the *636 Shillitani court interpreted language in the order providing that if the contemnors agreed to answer the questions an order terminating the sentence "may be made" as giving the defendants the unqualified right to purge the contempt and avoid the jail sentence. (384 U.S. at 368, 16 L.Ed.2d at 626, 86 S.Ct. at 1534.) The court concluded that the contemnors therefore carried the "keys to their prison" and the action was "`a civil remedy designed for the benefit of other parties.'" (384 U.S. at 368, 16 L.Ed.2d at 626, 86 S.Ct. at 1534, quoting Green v. United States (1958), 356 U.S. 165, 197, 2 L.Ed.2d 672, 696, 78 S.Ct. 632, 650 (Black, J., dissenting).) We reach the same conclusion here.
 5 The court below sentenced defendant to a fixed, 90-day jail term, but stayed the order conditioned upon defendant's future compliance with its orders. While the sentence differs from the Shillitani sentence in that Doherty was to remain free as long as he complied with the court's order, rather than remaining jailed until he complied, we believe it was no less coercive. (See People v. Batey (1986), 183 Cal. App.3d 1281, 228 Cal. Rptr. 787; People v. Derner (1986), 182 Cal. App.3d 588, 227 Cal. Rptr. 344; Baggett v. State (1985), 15 Ark. App. 113, 690 S.W.2d 362 (in which California and Arkansas courts reached the same conclusion with regard to similarly worded sentences imposed for defendants' contumacious disregard of child custody orders).) Unlike the orders to the Shillitani defendants to testify, the underlying orders issued by the court here (visitation and support orders) were of such a nature that a single act of compliance would not suffice. The court therefore had to issue an order that would compel defendant's continuing compliance with the terms of the dissolution judgment. (See Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO (3d Cir.1976), 545 F.2d 1336, 1344 (noting that coercive sanctions include those that serve to inform a potentially contumacious party of the penalty the court will impose for future disobedience).) We believe defendant's sentence was fashioned primarily to serve that purpose.
The sentence was also of great benefit to Margaret, as it virtually assured her of defendant's future recognition of her custody rights. (See, e.g., People v. Batey, 183 Cal. App.3d at 1289, 228 Cal. Rptr. at 792.) In addition, the contumacious conduct it sanctioned, as in Shillitani, consisted of defendant's failure to do what the court had affirmatively ordered. (See People v. Caruso (1987), 119 Ill.2d 376, 385 (holding, in another context, that a child custody order modifies the rights and duties of parents and imposes on the noncustodial parent "an affirmative duty to his children, their mother, and this State to *637 comply with that custody order and surrender custody" to the custodial parent). (Emphasis in original).) We also conclude, as did the Shillitani court, that where the circumstances establish the court's intent to coerce the defendant into future compliance with its orders, the inclusion of language providing that the court "may" vacate the prison sentence must be interpreted as affording the defendant the unconditional right to purge his contempt. (Shillitani, 384 U.S. at 368-69, 16 L.Ed.2d at 626, 86 S.Ct. at 1534-35.) We believe the language providing that the court "shall reconsider" the sentence if the defendant fully complies with its orders through August 3, 1986, conferred upon the defendant the unconditional right to purge his contempt. The defendant therefore carried the "keys to his cell."
 6 In addition, we note that, until his motion to dismiss the criminal charge, the defendant consistently treated the contempt action as a civil proceeding. While not determinative factors, the action was docketed as civil, pursued by a private party rather than the State, and the sentence gave rise to no actual punishment. (See, e.g., People v. Batey, 183 Cal. App.3d at 1289, 228 Cal. Rptr. at 792.) Moreover, the defendant simultaneously participated in both the contempt and child abduction proceedings for a period of seven months without objecting to the separate "prosecutions." (See Ill. Rev. Stat. 1985, ch. 38, par. 3-3(b) (requiring a single prosecution for all offenses arising from the same act).) In the contempt proceeding, his attorney argued in a memorandum that the facts indicated only a civil contempt, and the attorney made no objection when defendant was called by Margaret's attorney as an adverse witness. (See Bloom v. Illinois (1968), 391 U.S. 194, 205, 20 L.Ed.2d 522, 530, 88 S.Ct. 1477, 1484; Gompers v. Buck's Stove & Range Co. (1911), 221 U.S. 418, 444, 55 L.Ed. 797, 807, 31 S.Ct. 492, 499 (holding that a defendant in a criminal contempt proceeding may not be compelled to testify against himself).) We conclude that the proceeding and the sanction were for civil contempt and that prosecution of the defendant for child abduction will not offend double jeopardy principles.
 7 Although we have concluded that the sentence was a civil sanction designed to coerce defendant's future compliance with the court's orders, we recognize that, to the extent that it purported to impose a fixed prison term for any future violation within the stated period, it might be interpreted as a present adjudication of guilt for a future criminal contempt. (See Reina v. United States (1960), 364 U.S. 507, 515, 5 L.Ed.2d 249, 256, 81 S.Ct. 260, 265 (Black, J., dissenting).) Because the defendant has not appealed from the finding of contempt, however, the propriety of the sentence he received is not *638 before us. Moreover, we do not believe that the apparently future adjudication affects the coercive purpose the sentence was primarily intended to serve, or that it changes the character of the sanction from civil to criminal. Cf. Hoffman v. Beer Drivers & Salesmen's Local Union No. 888 (9th Cir.1976), 536 F.2d 1268, 1273 (concluding that a civil sanction imposing a fine payable only if the contemnor again violated the court's order was not transformed into a criminal penalty when a second violation occurred and the fine became due).
 8 We note additionally that, even had we determined the contempt to be criminal, this case is factually distinguishable from People v. Rodriguez (1987), 162 Ill. App.3d 149, in which we found a subsequent prosecution for child abduction to be prohibited. In Rodriguez, the defendant was indicted on criminal charges only after he was sentenced for contempt (162 Ill. App.3d at 151), raising at least the possibility that the prosecutor was seeking to impose an additional penalty for the same offense. Here, however, the grand jury indicted defendant on the criminal charge before the contempt proceedings were instituted. The prosecutor thus made no attempt to subject defendant to multiple trials but was simply without authority to prevent the dissolution court from exercising its inherent contempt power at the request of a civil litigant. (Cf. In re G.B. (1981), 88 Ill.2d 36, 41; In re Baker (1978), 71 Ill.2d 480, 484 (holding that the legislature may not limit or restrict the courts' inherent contempt power by statute).) While defendant vehemently argues that the prosecutor was aware of the contempt proceeding, we cannot equate that knowledge with authority to postpone the contempt action or to consolidate the cases. We know of no statutory or decisional law in this State which authorizes the State's Attorney to intervene in a contempt proceeding arising from private litigation. See, e.g., Safer v. Superior Court (1975), 15 Cal.3d 230, 540 P.2d 14, 124 Cal. Rptr. 174 (concluding that such intervention without authorization is improper, regardless of whether the contempt proceeding was civil or criminal in character).
While double jeopardy principles generally prohibit successive prosecutions for a greater and lesser included offense (Brown v. Ohio (1977), 432 U.S. 161, 169, 53 L.Ed.2d 187, 196, 97 S.Ct. 2221, 2227), exceptions have been recognized to allow successive prosecutions when reasonable or necessary, as where the first indictment takes place before the more serious crime has been completed, or the relevant facts discovered. (See Garrett v. United States (1985), 471 U.S. 773, 790-92, 85 L.Ed.2d 764, 779-80, 105 S.Ct. 2407, 2417-18; Brown v. Ohio (1977), 432 U.S. 161, 169 n. 7, 53 L.Ed.2d 187, 196 *639 n. 7, 97 S.Ct. 2221, 2227 n. 7; Diaz v. United States (1912), 223 U.S. 442, 56 L.Ed. 500, 32 S.Ct. 250; see also Jeffers v. United States (1977), 432 U.S. 137, 152, 53 L.Ed.2d 168, 181, 97 S.Ct. 2207, 2216-17 (plurality opinion) (expanding the exception to the situation where the defendant has impliedly waived his right to be free of double jeopardy by requesting that the charges against him be tried separately, without bringing the double jeopardy issue to the attention of the trial court).) Expressed in general terms, "successive prosecution on a greater offense may be permitted where justified by the public interest in law enforcement and the absence of prosecutorial overreaching." Garrett v. United States (1985), 471 U.S. 773, 796, 85 L.Ed.2d 764, 783, 105 S.Ct. 2407, 2421 (O'Connor, J., concurring).
We believe the exception ought to apply under the circumstances presented here. In this case, the prosecutor's actions were not oppressive. The State sought to prosecute only a single charge against the defendant. It was not given the opportunity in a prior trial to hone its presentation or test its arguments. (See, e.g., Ohio v. Johnson (1984), 467 U.S. 493, 501, 81 L.Ed.2d 425, 435, 104 S.Ct. 2536, 2542.) In addition, the defendant actively participated in both "prosecutions" simultaneously without objection. (See, e.g., Garrett v. United States, 471 U.S. at 797, 85 L.Ed.2d at 783, 105 S.Ct. at 2421 (O'Connor, J., concurring) (indicating that a defendant's conduct may justify applying the exception to the rule prohibiting successive prosecutions for a greater and lesser included offense); Jeffers v. United States, 432 U.S. at 154 n. 22, 53 L.Ed.2d at 182 n. 22, 97 S.Ct. 2218 n. 22 (indicating that a defendant may waive his double jeopardy protections by consciously neglecting to raise the issue at the trial level).) Continuances and scheduling problems, many directly attributable to defendant, effectively postponed the criminal trial until after the contempt proceedings had concluded. Although there is no indication in this case that defendant deliberately delayed the criminal action, the potential for abuse is readily apparent. We believe that the situation merits a legislative solution. (See People v. Marcisz (1975), 32 Ill. App.3d 467, 473 (recommending a preliminary hearing to determine whether the proceeding will be one for criminal or civil contempt); State v. Thompson (1983), 294 Or. 528, 659 P.2d 383 (noting that Oregon law requires joining the State as a party whenever a criminal contempt action is brought against a party in a civil suit); see also People ex rel. Rusch v. White (1929), 334 Ill. 465, 485-86 (noting that while the legislature may not limit a court's inherent contempt power, it may require the court to follow certain procedures in contempt actions).) In the absence of legislation, there is a tremendous potential *640 in cases like this for manipulation of court calendars by the defense to avoid prosecution for the more serious substantive offense. We do not believe that double jeopardy principles require that result. A criminal defendant "should not be entitled to use the Double Jeopardy Clause as a sword." Ohio v. Johnson (1984), 467 U.S. 493, 502, 81 L.Ed.2d 425, 435, 104 S.Ct. 2536, 2542.
For the reasons stated, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.
Reversed and remanded.
HOPF and INGLIS, JJ., concur.