*In re* MARRIAGE OF MARIA D'ATTOMO, Petitioner-Appellee, and NICK D'ATTOMO, Respondent-Appellant.

First District (4th Division)   No. 1—90—0434

Opinion filed March 28, 1991.

Carl M. Walsh and David Eckberg, both of Chicago, for appellant.

Kanter & Mattenson, Ltd., of Chicago (Stuart Gordon and Robert J. Kritzmire, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Nick D'Attomo was found to be in criminal contempt of court and sentenced to 30 days in Cook County jail for this reason: During the course of divorce proceedings between Nick and Maria D'Attomo, Nick absconded with their minor son, Nicky, and concealed him in Italy for more than two years. When Nick returned to the United States, he negotiated a plea bargain to the charge of child abduction, a felony, and received probation. Subsequently, the divorce court held a hearing to determine whether Nick was in criminal contempt for violating three orders entered in the dissolution proceedings. The court ruled that Nick should serve 120 days in jail, but later reduced it to 30 days.

On appeal, Nick contends that because he was charged with the felony of child abduction and pleaded guilty, he could not be again prosecuted for the same conduct under the criminal contempt proceedings without being twice put in jeopardy, in violation of the fifth amendment to the Federal Constitution and article I, section 10, of the Illinois Constitution.

Because we agree that double jeopardy applies, we reverse.

BACKGROUND

The pending appeal is from the trial court's order of October 6, 1989. In that order, the court found that Nick was in contempt of the

court's orders of "August 22, 1986, October 9, 1986, and March, 1988, *** in that [Nick had] willfully and contumaciously disregarded, violated and failed to comply with the Orders of this Court by his abduction of the minor child, NICKY, for a period of over two years."

The order of August 22, 1986, was an "order of protection," which the trial court entered after finding that Nick had physically abused Maria. The purpose of the order was to enjoin Nick from further harassing or physically abusing Maria, and one of the provisions of the order barred Nick from removing the minor child from the jurisdiction of the court or from concealing him. An agreed order of October 9, 1986, set forth detailed visitation for Nick, who was to receive alternating weekend visits, plus Monday and Wednesday evenings after school.

On August 3, 1987, approximately 10 months later, Nick failed to return Nicky to Maria. The next day, Nick called Maria and told her that unless she agreed to drop her request for permanent custody of Nicky, he would flee with the child and she would never see either of them again. Nick then left the country and remained in Italy for two years, during which time Maria had no contact with her son or knowledge of his whereabouts or safety.

During Nick's absence the divorce proceedings were concluded, and on March 4, 1988, the trial court entered a judgment of dissolution of marriage which awarded legal and physical custody of Nicky to Maria.

Nick decided to return to the United States in August 1989, because his father was undergoing surgery. He admitted that in all the time he was gone he never contacted Maria. His attorneys negotiated a deal with prosecutors in Lake County, Illinois, on the child abduction charge.

Following the October 5, 1989, hearing on Maria's petition for rule to show cause against Nick, the court found that Nick's pleadings admitted the essential allegations of removing the child in violation of the court's orders. The court then considered the willful or contemptuous nature of Nick's violation of the orders and stated its belief that Nick's "depriving this woman of the knowledge for a period of two years as to whether her son was dead or alive all add up into a serious matter of contempt." The court sentenced him to 120 days in jail.

The issue of double jeopardy apparently was not raised until Nick filed a petition for reconsideration. The parties briefed the issue, and on January 17, 1990, the court rejected the double jeopardy argument, stating that the contempt proceeding was "not a prosecution. This is a violation of the Court order, a contemptuous act on the part

of Mr. D'Attomo where a child was removed from the United States and kept from its mother for *** approximately two years. This is between this Court and Mr. D'Attomo, it's not between Mrs. D'Attomo and Mr. D'Attomo, it's between this Court. This order was entered by this Court and this Court has sentenced Mr. D'Attomo relative to a violation." Accordingly, the trial court denied the motion to reconsider its findings of contempt. The court did reduce the sentence, to 30 days, on the grounds that Nick had obtained a job and was able to pay at least partial child support.

OPINION

▉ Nick cannot be twice prosecuted for the *same* offense because of the proscription against double jeopardy. (See, *e.g., People v. Totten* (1987), 118 Ill. 2d 124, 130-31, 514 N.E.2d 959, 961, quoting *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65, 89 S. Ct. 2072, 2076 (fifth amendment " 'protects against a second prosecution for the same offense after acquittal *** [or] conviction [and] protects against multiple punishments for the same offense.' ").) The question before us, therefore, is whether the contempt proceeding is a second prosecution to punish the "same offense."

In *People v. Totten,* the court reviewed consolidated appeals, one involving direct criminal contempt and one involving indirect criminal contempt. In both cases, the defendants were prosecuted for aggravated battery, after being found in contempt of court for the same conduct. In both situations, the court held that such a result did not violate principles of double jeopardy.

▉ First, *Totten* noted that *direct* criminal contempt is an offense against the court itself. The court cited with approval Federal cases that have allowed subsequent prosecutions of defendants who have been held in contempt for striking prosecutors in open court. In such situations, the court is present during the attack and is empowered to impose summary sanctions. Because direct contempt citations punish the offender for improper courtroom behavior and are not adversarial in nature, a subsequent prosecution for battery is the first and only "trial" that the defendant is subjected to and therefore double jeopardy principles are not implicated. The court remarked that the fifth amendment protection against double jeopardy is grounded in the notion that a person should not be harassed by successive trials and be forced to marshal the resources to present his defense more than once for the same acts. (*Totten,* 118 Ill. 2d at 132-33, 514 N.E.2d at 962.) Since summary proceedings for direct contempt differ markedly from

subsequent criminal prosecutions, there is no second "trial" in such a case and there is no double jeopardy violation.

■ Next, the *Totten* court reviewed a case in which a defendant violated an *ex parte* order of protection that had been entered in a divorce proceeding to enjoin him from physically harming his wife. In violation of the order, he struck her and kicked her in the face. He was cited for contempt of court and additionally charged with aggravated battery in a separate proceeding. Before the aggravated battery charge came to trial, defendant was held to be in contempt of court for violating the order of protection and sentenced to 30 days in jail. He then moved to dismiss the criminal information on the ground that the same facts and conduct involved in the contempt proceedings were in issue in the aggravated battery prosecution. The trial court dismissed the charge, agreeing that jeopardy had attached, and the appellate court affirmed. The supreme court reversed, however, rejecting the "same evidence" test articulated in *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887. Instead, the court held that the test to be used in determining whether there are two offenses for double jeopardy purposes is " 'whether each provision requires proof of an additional fact which the other does not,' " quoting *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182. *Totten*, 118 Ill. 2d at 137, 514 N.E.2d at 964.

■ "To sustain a finding of indirect criminal contempt for the violation of a court order outside the presence of the court, two elements must be proved: (i) the existence of a court order, and (ii) a willful violation of that order." (*Totten*, 118 Ill. 2d at 138, 514 N.E.2d at 965.) The court listed the elements of aggravated battery, which require a showing that defendant caused great bodily harm to the victim and did so intentionally. The court noted that aggravated battery requires proof of such harm, while indirect criminal contempt does not. The court also stated that indirect criminal contempt required the existence of a court order, while aggravated battery does not. Finally, the court said each offense requires proof of a different state of mind. Aggravated battery was not a crime consisting solely of one or more of the elements of a protective order. The court concluded that each offense required proof of a fact that the other did not and thus did not constitute the same offense under the *Blockburger* test.

In *People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 514 N.E.2d 1033, the Second District Appellate Court applied the *Totten* test to a divorce case involving both a battery on the mother and a child abduction. The defendant was held in contempt and sentenced to 60 days in

jail for violating the trial court's order of protection. When he was subsequently indicted upon criminal charges, including child abduction, he moved to have the indictment dismissed on the grounds of double jeopardy. The court held that, under *Totten,* double jeopardy did not bar the prosecution for the battery and residential burglary charges. It did, however, bar prosecution for child abduction under section 10—5(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 10—5(b)(1)).

■■ The current version of that statute defines the offense of child abduction in pertinent part as follows: "A person commits child abduction when he or she: (1) Intentionally violates any terms of a valid court order granting sole or joint custody, care or possession to another, by concealing or detaining the child or removing the child from the jurisdiction of the court." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(1).) *Rodriguez* held that the language of this section established that "child abduction and indirect criminal contempt for failure to comply with a custody order are virtually the same offense and each requires proof that defendant intentionally violated a custody order." 162 Ill. App. 3d at 155, 514 N.E.2d at 1037.

■■ We do not believe that we can adequately distinguish the pending case from *Rodriguez,* despite the fact that here, the plea bargain on the felony charge was made before the contempt proceedings were held. Maria attempts to distinguish the two cases on factual differences, such as the amount of time that the minor child was removed from the custodial parent (one day in *Rodriguez*) and the number of court orders in question (one in *Rodriguez* and three in the pending case). We do not, however, find such factual differences persuasive on the question of whether the child abduction statute defines the same offense as indirect criminal contempt for violating a custody order by removing or concealing a child. Therefore, we must reach a consistent result and hold that double jeopardy bars the contempt proceedings against Nick D'Attomo, unless we find a principled reason for departing from *Rodriguez.*

The same appellate district that decided *Rodriguez* commented further on that decision in *People v. Doherty* (1988), 165 Ill. App. 3d 630, 518 N.E.2d 1303. There the major issue concerned the distinction between civil and criminal contempt proceedings. The father of the parties' minor children had failed to return them after a weekend visit and was found a year later in another State. While the criminal charge of child abduction was pending against the father, the mother filed a petition for rule to show cause in the divorce court and the trial court held the father in contempt of court for violating its cus-

tody order. Thereafter, the father successfully moved for dismissal of his criminal indictment, on double jeopardy grounds. In that case, the 90-day jail term imposed on the contempt citation was stayed pending future compliance with the court's pending orders. The State appealed and the appellate court reversed, primarily on the grounds that because the court's contempt finding was *civil* in nature, jeopardy did not attach.

The *Doherty* court went on to suggest that even if the case before it involved criminal contempt rather than civil contempt, *Rodriguez* would not require a different outcome. First, the court noted that in *Rodriguez* the defendant was indicted on criminal charges only after he was sentenced for contempt, raising the possibility that the prosecutor was seeking to impose an additional penalty for the same offense. In contrast, in *Doherty* the grand jury had indicted the defendant on the criminal charge before the contempt proceedings were instituted. Second, the court analyzed an exception to the general rule prohibiting successive prosecutions for a greater and lesser included offense. Citing decisions of the United States Supreme Court, the *Doherty* court noted that successive prosecutions may be permitted where reasonable and necessary, as where the first indictment is issued before the more serious crime has been completed or the relevant facts discovered. (*E.g., Garrett v. United States* (1985), 471 U.S. 773, 790-92, 85 L. Ed. 2d 764, 779-80, 105 S. Ct. 2407, 2417-18.) The *Doherty* court, classifying indirect criminal contempt as a *lesser included offense* of child abduction, concluded that the exception should apply because the State sought to prosecute a single charge against the defendant and was not given the opportunity in a prior trial to hone its case. In fact, the court noted that a defendant could deliberately delay the criminal action until after the contempt citation, in order to avoid the greater liability.[1]

Noting the potential for abuse, the court remarked:

---

[1]Here, it may seem ironic that Nick faced the felony charge and received probation, while he would have received a jail term for violating the court's order under the contempt citation. Because the issue raised involves double jeopardy, however, we do not find it material that Nick received a "lesser" punishment for what may be viewed as a greater offense. The civil court's ability to impose *criminal* sanctions is limited to those permitted under the common law of contempt. In some cases, the same conduct will give rise to misdemeanor or felony offenses that may be separately punished. For example, a person who violates an order of protection under the Domestic Violence Act of 1986 (Ill. Rev. Stat. 1987, ch. 40, par. 2312—14) may be charged with a Class A misdemeanor (Ill. Rev. Stat. 1987, ch. 38, par. 12—30(d)), or, as in the pending case, the felony of child abduction.

"We believe that the situation merits a legislative solution. (See *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 473[, 334 N.E.2d 737] (recommending a preliminary hearing to determine whether the proceeding will be one for criminal or civil contempt); *State v. Thompson* (1983), 294 Or. 528, 659 P.2d 383 (noting that Oregon law requires joining the State as a party whenever a criminal contempt action is brought against a party in a civil suit); see also *People ex. rel Rusch v. White* (1929), 334 Ill. 465, 485-86[, 166 N.E.2d 100] (noting that while the legislature may not limit a court's inherent contempt power, it may require the court to follow certain procedures in contempt actions).)" *Doherty*, 165 Ill. App. 3d at 639, 518 N.E.2d at 1308-09.

■ We agree that a clearer set of guidelines than currently exists would be useful in determining whether and in what circumstances successive prosecutions for the same conduct creates double jeopardy, when one of the proceedings is for indirect criminal contempt of court and the other for violation of a criminal statute. The inherent power of the court to vindicate its authority and dignity seems distinct from the rights and duties of the State in punishing violations of its criminal statutes. Nevertheless, our research has not revealed cases in which this distinction has been held dispositive or even persuasive on the issue of double jeopardy in the context of indirect criminal contempt. In fact, the Illinois Supreme Court in *Totten* distinguished between direct and indirect criminal contempt on the basis that the former is a crime against the court's dignity, occurring in open court, and does not require an evidentiary hearing but may be summarily adjudicated because the court has personal knowledge of the facts. In contrast, indirect criminal contempt occurs outside of the courtroom and the civil court must hold a hearing and make findings before imposing a criminal sanction.

*Totten* adopted the *Blockburger* test of determining whether there are two offenses for double jeopardy purposes and concluded that the dispositive inquiry is whether the two offenses each require proof of an additional fact that the other does not. Under this analysis, as *Rodriguez* found, removing and concealing a minor child in violation of a custody order amounts to the same offense as that defined under the criminal code as child abduction.

Maria's reliance on *Doherty* as a case that modified or narrowed the *Rodriguez* holding is unpersuasive. In the first place, the dispositive holding of *Doherty* was that double jeopardy is not a factor when the nature of the contempt sanctions may be seen as civil rather than

criminal. That is not the issue in this case. Second, *Doherty* noted, in *dicta*, that indirect criminal contempt is a lesser included offense of child abduction and under some circumstances, a person who is held in contempt on the "lesser included" charge may nonetheless be later tried for the "greater" charge, in this case child abduction. We are faced with the reverse situation in that Nick has already been sanctioned under the criminal code. Presumably, the "lesser included" offense of indirect criminal contempt would have merged into the felony conviction.

The cases hold that in those instances where the same conduct amounts to both a violation of a court order and a separate criminal offense, double jeopardy principles do not bar successive prosecutions if the elements of the statutory offense and the indirect criminal contempt are differently defined, as determined under the *Totten* analysis. When the analysis leads to the conclusion that the two offenses are the same, as in the pending case involving the child abduction statute, violation of double jeopardy principles occur when the defendant is subjected to a second trial or receives a second criminal sanction.

The remaining issue is whether Nick's violation of three separate orders provides justification for finding that double jeopardy does not apply. Maria contends that, at the most, the negotiated guilty plea for child abduction only reached the October 9, 1986, order. Therefore, she argues, the other two orders form the basis for separate and distinct charges of contempt. Nick counters that there was only one act of abduction and concealment; the mere fact that more than one order referred to custody or visitation rights is immaterial. Maria cites no cases to support her position and, although we are sympathetic to her plight, we must reject this argument. We believe that the initial abduction and two-year concealment was but one, continuing act of contempt. Maria's brief suggests that Nick violated the October 9, 1986, visitation order every time he failed to return Nicky at the end of a weekend or Monday and Wednesday evening, for a total of "over 250 separate and distinct violations." The fallacy of this statement is evident; to view Nick's one act as separate, repeated acts would lead to absurd results. We therefore conclude that since the violation of all three custody orders referred to in the court's findings stems from the same act of removing the child from the jurisdiction, Nick committed one continuing act of contempt and not several distinct acts.

In conclusion, we find that since the child abduction statute is defined in such a way as to criminalize the violation of a custody order by the removal or concealment of a child, such offense is the same as

the indirect criminal contempt charge in the pending case, for purposes of double jeopardy. Therefore, we are compelled to find that Nick's criminal contempt citation placed him twice in jeopardy for the same crime and must be reversed. We acknowledge that such a result appears to leave the civil court without power to vindicate its own authority when a criminal prosecution for the same conduct has already occurred. Either the legislature or the Illinois Supreme Court may wish to address this situation. We do not believe, however, that this court may deviate from the rationale of *Totten* and its logical application in *Rodriguez* under the facts of this case.

As this case involved a narrow issue of double jeopardy only, nothing in this opinion should be read to limit Maria's right to pursue civil tort remedies she may have against Nick or to recover whatever costs and attorney fees to which she may be entitled as a result of Nick's conduct.

For the foregoing reasons, we reverse the trial court's order finding Nick in criminal contempt of court and vacate the attendant 30-day term in jail.

Reversed.

JIGANTI, P.J., and McMORROW, J., concur.